PETER J. SALMON (SBN 174386)
DOUGLAS A. TOLENO (SBN 250472)
JILLIAN A. BENBOW (SBN 246822)
PITE DUNCAN, LLP
525 E. Main Street
P.O. Box 12289
El Cajon, CA 92022-2289
Telephone: (619) 590-1300
Facsimile: (619) 590-1385
E-Mail: jbenbow@piteduncan.com

Attorneys for Plaintiff
AURORA LOAN SERVICES, LLC

FILED
2008 MAY 29 PM 3:10
CLERK US DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA
BY KNH DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

AURORA LOAN SERVICES, LLC,

Plaintiff,

v.

MARGARET LUCERO, an individual,

Defendant.

Case No. '08 CV 0950 IEG JMA

**COMPLAINT FOR RESCISSION AND DECLARATORY RELIEF**

Complaint Filed:
Judge:
Dept:
Trial Date:

Plaintiff, AURORA LOAN SERVICES LLC (hereinafter "Aurora"), by and through its undersigned counsel, Pite Duncan LLP, submits its complaint against the defendant, Margaret Lucero ("Ms. Lucero"), as follows:

**GENERAL ALLEGATIONS**

1. The United States District Court for the Southern District of California has original jurisdiction over this matter pursuant to 28 U.S.C. §1331, because Aurora asserts claims under the federal Truth in Lending Act, 15 U.S.C. § 1601, et. seq. ("TILA ").

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391, because, upon information and belief, this is the judicial district in which the defendant resides and in which the property that is the subject of this civil action is situated.

/./.

3. Aurora is, and at all times herein mentioned was, Delaware limited liability company, with its principal place of business in Littleton, Colorado.

4. Aurora is informed and believes and thereon alleges that Defendant, MARGARET LUCERO ("Lucero") is, and at all times herein mentioned was, an individual residing in San Diego County, California.

5. On or about November 1, 2006, Lucero entered into a written agreement with CMG Mortgage, Inc. ("CMG") a California corporation, whereby Lucero borrowed money from CMG (the "Loan") for a refinance of Ms. Lucero's primary residence located at 4434 Brisbane Way #3, Oceanside, California 92054 (the "Subject Property").

6. In connection with the Loan, Lucero executed an adjustable rate note (the "Note") in the original principal amount of $339,000.00, which note was payable to CMG and its successors and assigns. A true and correct copy of the Note is attached hereto as **EXHIBIT A** and incorporated herein by reference.

7. On or about November 1, 2006, as security for the obligation under the Note, Lucero executed a Deed of Trust secured by the Subject Property (the "Deed of Trust"). A true and correct copy of the Deed of Trust is attached hereto as **EXHIBIT B** and incorporated herein by reference.

8. Upon information and belief, Ms. Lucero was timely provided with all disclosures required under the TILA.

9. On or about November 22, 2006, CMG sold and assigned its interest in the Loan to Lehman Brothers Bank, FSB, its successors and assigns.

10. Aurora is and at all times relevant hereto has been the servicer of Ms. Lucero's Loan and is therefore responsible for collecting monthly mortgage payments and enforcing the terms of the Note and Deed of Trust.

11. During an audit of the Loan file by Aurora in or about April 2007, Aurora discovered a clerical error in the final TILA disclosure executed by Lucero at closing. Specifically, Aurora discovered that the amount of the total finance charge was understated by $1,915.19.

/./.

/./.

12. In order to cure the aforementioned error, on or about June 12, 2007, Plaintiff sent Lucero a letter notifying her of the error, together with a refund check in the amount of $1,915.19. In connection with Aurora's disclosure of the error and issuance of a refund, Aurora also provided Ms. Lucero with a new Notice of Right to Cancel form "re-opening" Lucero's rescission period pursuant to 15 U.S.C. § 1635 *et seq*. True and correct copies of the letter, check and Notice of Right to Cancel are attached hereto as **EXHIBIT C** and incorporated herein by reference.

13. On or about June 16, 2007, within the three day period provided in the new Notice of Right to Cancel, Ms. Lucero sent written notice to Aurora via facsimile of her election to cancel the Loan. A true and correct copy of the written notice is attached hereto as **EXHIBIT D** and incorporated herein by reference.

## FIRST CAUSE OF ACTION

**(Rescission - 15 U.S.C. § 1635)**

14. Aurora incorporates paragraphs 1 through 13 above as if fully set forth herein.

15. Pursuant to TILA and Ms. Lucero's written notice of cancellation, Aurora has been and is presently prepared to rescind the Loan, including refund of the finance charges and other amounts provided in 15 U.S.C. § 1635(b) et seq., and termination of the security interest created by the Deed of Trust.

16. In order to complete a rescission of the Loan, Aurora contacted Ms. Lucero, provided her with the payoff amount necessary for her to tender to Aurora, and requested confirmation that she would be able to tender in order to effect the rescission under TILA.

17. Thereafter, Aurora made diligent efforts for several months to reach an amicable resolution of Ms. Lucero's rescission request whereby Aurora would refund the amounts due and reconvey the Deed of Trust, and whereby Ms. Lucero would tender.

18. Aurora also communicated with Ms. Lucero's counsel in efforts to arrange the rescission, to no avail.

19. Despite Aurora's efforts, as of the date of this complaint, Aurora has been unable to complete the rescission because Lucero has failed to tender or provide a sufficient indication of her ability and intent to tender.

20. Under TILA, the Loan may be deemed rescinded and the Deed of Trust considered void upon the borrower's exercise of her right to rescind, however, in accordance with Regulation Z, 12 C.F.R. § 226.23(d)(4) et seq., the Court has the power to equitably modify the procedures outlined in TILA, requiring that the rescission be conditional upon and preceded by the borrower's tender.

21. Aurora seeks an order from the Court equitably modifying the rescission procedures as provided in TILA and Regulation Z to require tender by Ms. Lucero in advance of any rescission, or in the alternative, denying Ms. Lucero's request to rescind and holding that the Loan is not rescinded and that all terms of the Note, Deed of Trust and other Loan documents remain in full force and effect.

**SECOND CAUSE OF ACTION**
**(Declaratory Relief)**

22. Aurora incorporates paragraphs 1 through 21 inclusive above as if same were set forth at length herein.

23. Upon information and belief, Ms. Lucero is unwilling or unable to perform her tender obligations in connection with any rescission of the Loan under TILA.

24. Based upon the foregoing, an actual controversy exists with respect to Ms. Lucero's request to cancel the Loan.

25. Pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P. 57, this Court may declare the rights and other legal relations of the parties.

26. A declaration of the parties' respective rights and obligations with respect to the Loan is necessary and appropriate in order that Aurora may properly service the Loan.

27. Aurora seeks a judicial declaration that Ms. Lucero's request to rescind the Loan under TILA is denied, that the Loan is not rescinded, and all terms of the Note, Deed of Trust and other Loan documents shall remain in full force and effect according to their terms.

/./.

/./.

/./.

**WHEREFORE**, plaintiff, Aurora Loan Services LLC, respectfully requests judgment in its favor and against the defendant, Margaret Lucero, as follows:

1. For an order equitably modifying the rescission procedures under TILA and Regulation Z to require Ms. Lucero to tender the appropriate amounts to Aurora by a date certain and prior to Aurora's termination of the security interest created by the Deed of Trust, or, alternatively,

2. For an order declaring that Ms. Lucero's request to rescind the Loan is denied, that the Loan is not rescinded under TILA, and that the Loan shall remain in full force and effect according to its original terms; and

3. For costs of suit incurred herein; and

4. For such additional relief as the Court may deem just and proper

Dated: May 27, 2008

PITE DUNCAN, LLP

JILLIAN A. BENBOW
Attorneys for Plaintiff
AURORA LOAN SERVICES, LLC

EXHIBIT A

CERTIFIED TO BE A TRUE AND CORRECT COPY OF THE ORIGINAL
BY MC

Loan No 30533945

# ADJUSTABLE RATE NOTE

(LIBOR Six-Month Index (As Published in *The Wall Street Journal*) - Rate Caps)

MIN 1000724-0030533945-2
MERS TELEPHONE (888) 679 6377

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY**

| | | |
|---|---|---|
| November 1, 2006 | OCEANSIDE | CALIFORNIA |
| [Date] | [City] | [State] |

4434 BRISBANE WAY #3, OCEANSIDE, CALIFORNIA 92054
[Property Address]

**1 BORROWER'S PROMISE TO PAY**

In return for a loan that I have received I promise to pay U S $ 339,000 00 (this amount is called Principal ) plus interest to the order of Lender Lender is CMC MORTGAGE, INC I will make all payments under this Note in the form of cash check or money order

I understand that Lender may transfer this Note Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the Note Holder

**2 INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid I will pay interest at a yearly rate of 6 875% The interest rate I will pay may change in accordance with Section 4 of this Note

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note

**3 PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month

I will make my monthly payments on the FIRST day of each month beginning on January 1, 2007 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal If on December 1, 2036 I still owe amounts under this Note I will pay those amounts in full on that date, which is called the Maturity Date

I will make my monthly payments at 3160 CROW CANYON ROAD, SUITE 240, SAN RAMON, CALIFORNIA 94583 or at a different place if required by the Note Holder

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U S $ 2,226 99 This amount may change

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note

**4 INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**



Initials

note3520

30533945

NOTE

EXHIBIT A

The interest rate I will pay may change on the **FIRST** day of **December, 2011** and on that day every 6th month thereafter Each date on which my interest rate could change is called a Change Date

**(B) The Index**

Beginning with the first Change Date my interest rate will be based on an Index The Index is the average of interbank offered rates for six month U S dollar denominated deposits in the London market ( LIBOR ), as published in *The Wall Street Journal* The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the Current Index

If the Index is no longer available the Note Holder will choose a new index that is based upon comparable information The Note Holder will give me notice of this choice

**(C) Calculation of Changes**

Before each Change Date the Note Holder will calculate my new interest rate by adding **Two and Three-Fourths** percentage points (2 750%) to the Current Index The Note Holder will then round the result of this addition to the nearest one eighth of one percentage point (0 125%) Subject to the limits stated in Section 4(D) below this rounded amount will be my new interest rate until the next Change Date .

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments The result of this calculation will be the new amount of my monthly payment

**(D) Limits on Interest Rate Changes** .

The interest rate I am required to pay at the first Change Date will not be greater than 12 875% or less than 6 875% Thereafter my interest rate will never be increased or decreased on any single Change Date by more than two percentage points (2 000%) from the rate of interest I have been paying for the preceding 6 months My interest rate will never be greater than 12 875%

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice

**5 BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a Prepayment When I make a Prepayment, I will tell the Note Holder in writing that I am doing so I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note If I make a partial Prepayment there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment However any reduction due to my partial Prepayment may be offset by an interest rate increase

**6 LOAN CHARGES**

If a law which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from me that exceeded permitted limits will be refunded to me The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me If a refund reduces Principal the reduction will be treated as a partial Prepayment

**7 BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**



Initials

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due I will pay a late charge to the Note Holder The amount of the charge will be five percent (5 00%) of my overdue payment of principal and interest I will pay this late charge promptly but only once on each late payment

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default

**(C) Notice of Default**

If I am in default the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default the Note Holder does not require me to pay immediately in full as described above the Note Holder will still have the right to do so if I am in default at a later time

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law Those expenses include for example reasonable attorneys fees

**8 GIVING OF NOTICES**

Unless applicable law requires a different method any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address

**9 OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note each person is fully and personally obligated to keep all of the promises made in this Note including the promise to pay the full amount owed Any person who is a guarantor surety or endorser of this Note is also obligated to do these things Any person who takes over these obligations including the obligations of a guarantor surety or endorser of this Note is also obligated to keep all of the promises made in this Note The Note Holder may enforce its rights under this Note against each person individually or against all of us together This means that any one of us may be required to pay all of the amounts owed under this Note

**10 WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor Presentment means the right to require the Note Holder to demand payment of amounts due Notice of Dishonor means the right to require the Note Holder to give notice to other persons that amounts due have not been paid

**11 UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the Security Instrument ), dated the same date as this Note protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note Some of those conditions read as follows

> **Transfer of the Property or a Beneficial Interest in Borrower** As used in this Section 18, Interest in the Property means any legal or beneficial interest in the Property including but not limited to those beneficial interests transferred in a bond for deed, contract for deed installment sales contract or escrow agreement the intent of which is the transfer of title by Borrower at a future date to a purchaser
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent Lender may require immediate payment in full of all sums secured by this Security Instrument However this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law Lender also shall not exercise this option if (a) Borrower causes to be submitted to Lender information required by Lender to evaluate



Initials [signature]

the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender

To the extent permitted by Applicable Law Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

| | |
|---|---|
| MARGARET B LUCERO _______ (Seal) -Borrower | _______ (Seal) Borrower |
| _______ (Seal) Borrower | _______ (Seal) Borrower |

*[Sign Original Only]*

Pay to the order of

_______

Without Recourse
CMG MORTGAGE INC

By _______

Name and Title _______

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE PROMISSORY NOTE

LOAN NUMBER 30533945

PROPERTY ADDRESS 4434 BRISBANE WAY #3
OCEANSIDE, CALIFORNIA 92054

**THIS ADDENDUM** is made this 1st day of November, 2006 and is incorporated into and intended to form a part of the Adjustable Rate Note (the Note ) dated the same date as this Addendum executed by the undersigned and payable to **CMC MORTGAGE, INC** (the Lender)

**THIS ADDENDUM** supersedes Sections 3(A) 3(B) 4(C) and 7(A) of the Note None of the other provisions of the Note are changed by this Addendum

**3 PAYMENTS**

**(A) Time and Place of Payments**

I will pay interest by making payments every month for the first 120 payments (the Interest Only Period ) in the amount sufficient to pay interest as it accrues I will pay principal and interest by making payments every month thereafter for the next 240 payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest Only Period over the remaining term of the Note in equal monthly payments

I will make my monthly payments on the **FIRST** day of each month beginning on **January 1, 2007** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal If on **December 1, 2036** I still owe amounts under this Note I will pay those amounts in full on that date which is called the ' Maturity Date '

I will make my payments at **3160 CROW CANYON ROAD, SUITE 240, SAN RAMON, CALIFORNIA 94583** or at a different place if required by the Note Holder

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U S $ 1,942 19 This payment amount is based on the original principal balance of the Note This payment amount may change

**4 INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(C) Calculation of Changes**

Before each Change Date the Note Holder will calculate my new interest rate by adding **Two and Three-Fourths** percentage point(s) **(2 750%)** to the Current Index for such Change Date The Note Holder will then round the result of this addition to the nearest one eighth of one percentage point (0 125%) Subject to the limits stated in Section 4(D) this rounded amount will be my new interest rate until the next Change Date



30533945

ALLONGE

During the Interest Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest Only Period unless I make a voluntary prepayment of principal during such period If I make a voluntary prepayment of principal during the Interest Only Period my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance At the end of the Interest Only Period and on each Change Date thereafter the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest Only Period or Change Date as applicable, in equal monthly payments over the remaining term of the Note The result of this calculation will be the new amount of my monthly payment After the end of the Interest Only Period, my payment amount will not be reduced due to voluntary prepayments

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due I will pay a late charge to the Note Holder The amount of the charge will be five percent (5%) of my overdue payment of interest during the interest only period, five percent (5%) of my overdue payment of principal and interest thereafter I will pay this late charge promptly but only once on each late payment

Dated 11-1-06

Borrower MARGARET R LUCERO

Borrower

Borrower

Borrower

8201

DOC # 2006-0789355

NOV 06, 2006 1:42 PM

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES: 84.00
PAGES: 26 DA: 1

2006-0789355

**FIDELITY NATIONAL TITLE**
Recording Requested By:

Return To:
**CMG MORTGAGE, INC.**
**3160 CROW CANYON ROAD, SUITE 240**
**SAN RAMON, CALIFORNIA 94583**
Attn.: **Shipping Dept/Document Control**
Prepared By:

281944-B

**[Space Above This Line For Recording Data]**

# DEED OF TRUST

MIN **1000724-0030533945-2**
**MERS TELEPHONE: (888) 679-6377**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **November 1, 2006**, together with all Riders to this document.
**(B) "Borrower"** is **MARGARET R. LUCERO, AN UNMARRIED WOMAN.** Borrower's address is **4434 BRISBANE WAY #3, OCEANSIDE, CALIFORNIA 92054.** Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **CMG MORTGAGE, INC..** Lender is a corporation organized and existing under the laws of the **State of CALIFORNIA.** Lender's address is **3160 CROW CANYON ROAD, SUITE 240, SAN RAMON, CALIFORNIA 94583.**
**(D) "Trustee"** is **FIDELITY NATIONAL TITLE COMPANY.**
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated **November 1, 2006.** The Note states that Borrower owes Lender **Three Hundred Thirty Nine Thousand And 00/100** Dollars (U.S.



EXHIBIT B

8202

$339,000.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **December 1, 2036**.

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Planned Unit Development Rider | Prepayment Rider |
| [ ] Balloon Rider | [ ] Biweekly Payment Rider | Addendum to ARM Rider |
| [ ] VA Rider | [ ] Second Home Rider | Interest Only Addendum to ARM Rider |
| [X] Condominium Rider | [ ] 1-4 Family Rider | |
| | [X] Other(s) [specify] | |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County [Type of Recording Jurisdiction] of **SAN DIEGO** [Name of Recording Jurisdiction]:

8203

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.**

Parcel ID Number: **158-030-39-28**

which currently has the address of

**4434 BRISBANE WAY #3** [Street]

**OCEANSIDE** [City], California **92054** [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such

8204

payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3. Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower

8206

acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for

8207

repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required

8208

Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the

8209

partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee

to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay

these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

8212

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

8213

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_______________________ _______________________ (Seal)
MARGARET R LUCERO -Borrower

_______________________ _______________________ (Seal)
-Borrower

_______________________ _______________________ (Seal)
-Borrower

_______________________ _______________________ (Seal)
-Borrower

8214

State of California )
County of San Diego ) ss.

On 11/1/2006 before me, Sylvia Brooks, Notary Public
personally appeared

**MARGARET R. LUCERO,**

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

SYLVIA BROOKS
COMM. #1625156
Notary Public - California
San Diego County
My Comm. Expires Nov. 29, 2009
NRC01

(Seal)

8215

## ADDENDUM TO ADJUSTABLE RATE RIDER

This addendum is made **November 1, 2006** and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:

**4434 BRISBANE WAY #3, OCEANSIDE, CALIFORNIA 92054**

**AMENDED PROVISIONS**

In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

**ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **12.875%** or less than **6.875%**. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than Two percentage points (2.000%) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than **12.875%**. My interest rate will never be less than **6.875%**.

**TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest In Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.



30533945

ALLONGE

nf

8216

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

_______________ (Seal)
MARGARET D. LUCERO -Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

8217

# PREPAYMENT RIDER

*(Multi-state)*

This Prepayment Rider is made this **1st** day of **November, 2006** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to **CMG MORTGAGE, INC.** (the "Lender") of the same date and covering the property described in the Security instrument and located at **4434 BRISBANE WAY #3, OCEANSIDE, CALIFORNIA 92054** (the "Property").

**Additional Covenants.** Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

Borrower has the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." A "full prepayment" is the prepayment of the entire unpaid principal due under the Note. A payment of only part of the unpaid principal is known as a "partial prepayment."

**If, within the four (4) month period beginning with the date Borrower execute the Note (the "Penalty Period"), Borrower makes a Full Prepayment, or Partial Prepayment in any four (4)-month period that exceeds 20% of the original principal loan amount, Borrower will pay a Prepayment charge as consideration for the Note Holder's acceptance of such Prepayment. The Prepayment charge will equal the amount of interest that would accrue during a six (6) month period on the amount prepaid that exceeds 20% of the original principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of prepayment, unless otherwise prohibited by applicable law or regulation. No Prepayment charge will be assessed for any Prepayment made after the Penalty Period.**

Notwithstanding the foregoing, in the event of a full prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first four (4) months of the term of the Note, no Prepayment charge will be assessed. In that event, Borrower agrees to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

| | |
|---|---|
| [signature] (Seal)<br>Borrower MARGARET R. LUCERO | _______________ (Seal)<br>Borrower |
| _______________ (Seal)<br>Borrower | _______________ (Seal)<br>Borrower |



30533945

RIDER

8218

**INTEREST-ONLY ADDENDUM**
**TO ADJUSTABLE RATE RIDER**

LOAN NUMBER: **30533945**

PROPERTY ADDRESS: **4434 BRISBANE WAY #3**
**OCEANSIDE, CALIFORNIA 92054**

**THIS ADDENDUM** is made this **1st** day of **November, 2006**, and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as this Addendum executed by the undersigned and payable to **CMG MORTGAGE, INC.** (the Lender).

**THIS ADDENDUM** supersedes Section 4(C) of the Rider. None of the other provisions of the Note are changed by this Addendum.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two and Three-Fourths** percentage point(s) (**2.750%**) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

Dated: 11-1-06

[signature] 11-1-06

Borrower MARGARET R. LUCERO Date Borrower Date

Borrower Date Borrower Date

30533945



ALLONGE

8219

# ADJUSTABLE RATE RIDER

**(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this **first** day of **November, 2006**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **CMG MORTGAGE, INC.** ("Lender") of the same date and covering the property described in the Security Instrument and located at:

**4434 BRISBANE WAY #3, OCEANSIDE, CALIFORNIA 92054**
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of **6.875%**. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the **first** day of **December, 2011**, and on that day every **6th** month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

8220

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Two and Three-Fourths** percentage points (**2.750%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **12.875%** or less than **6.875%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **Two** percentage points (**2.000%**) from the rate of interest I have been paying for the preceding **6** months. My interest rate will never be greater than **12.875%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.
>
> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

8221

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

8222

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

MARGARET R. LUCERO (Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

8223

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this **1st** day of **November, 2006**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **CMG MORTGAGE, INC.** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**4434 BRISBANE WAY #3, OCEANSIDE, CALIFORNIA 92054**
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

**BRISBANE**
[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

8224

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which



Initials: ______

8225

would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

[signature] (Seal)
MARGARET R. LUCERO -Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

**MULTISTATE CONDOMINIUM RIDER**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

**Form 3140 1/01**

26

Order No. 06-2819448

## EXHIBIT "ONE"

8226

A Condominium Comprised Of:

Parcel 1:

An undivided 1/30th fee simple interest as a tenant in common in and to Building Envelope Nos. 29, 30, 31, 32 and 33 as shown and defined on that certain Condominium Plan of Brisbane Phase 7, recorded in the Office of the County Recorder of San Diego County on June 06, 2003 as Instrument No. 2003-0774042of Official Records ("Condominium Plan "), which is situated within Module G located within Lot 2 of Douglas Drive Condominiums, Map No. 14554, in the City of Oceanside, County of San Diego, State of California, filed in the Office of the County Recorder of San Diego County, March 10, 2003 of Official Records, as shown on the Condominium Plan.

Excepting therefrom all Residential Units within Building Envelope Nos. 29, 30, 31, 32 and 33 within Module G as shown and defined on the Condominium Plan.

Parcel 2:

Residential Unit No. 187, as shown and defined on the Condominium Plan.

Parcel 3:

An exclusive right to use and occupy the Exclusive Use Common Area, if any, as identified on the Condominium Plan as appurtenant to the Residential Unit listed above. Said Exclusive Use Common Areas shall be and are hereby declared appurtenant to Parcel 2 described above.

Parcel 4:

A non-exclusive easement, in common with other owners, for ingress, egress, use and enjoyment, over, in, to and throughout the Association Property shown on the Condominium Plan and over, in, to and throughout the Association Property of the other Phases of the property described in the Declaration excepting therefrom any Exclusive Use Common Areas situated thereon, which easements are appurtenant to Parcels 1, 2 and 3 described above, subject to the provisions of the Declaration.

Parcel 5:

A nonexclusive easement for ingress, egress, and access on, over, through and across a portion of Rainier Way, in the City of Oceanside, County of San Diego, State of California, according to that certain Easement Agreement dated December 1, 2002 and recorded March 11, 2003 as Instrument No. 2003-0271760in the Official Records of the Office of the County Recorder of San Diego County.

Assessors Parcel No.:158-030-39-28

## Michelle Mierzwa

**From:** Michelle Mierzwa
**Sent:** Friday, May 23, 2008 10:02 AM
**To:** World Savings-Michael B. Goldberg
**Cc:** John Duncan; Bruce J. Quilligan
**Subject:** Loan No. 07902034 PD No. 000008-000115.002 (Lenett v. World Savings, et al. - Defense of Plaintiff's Second Appeal)

**Attachments:** Petition for Rehearing.pdf

Petition for Rehearing.pdf (79...

Hi Mike,

Attached is a copy of Lenett's Petition for Rehearing on the grounds that "there is a misunderstanding as to a material statement of fact or law in the appellate court's opinion that would cast serious doubt as to the outcome of the case." The petition is timely according to California Rules of Court. A review of applicable Rules of Court and cited case law regarding grounds for petition for rehearing indicates that it is unlikely a rehearing will be granted. No answer to the petition is required unless the Court of Appeal issues an order requesting an answer, and a petition for rehearing normally will not be granted unless the court has requested an answer. Thus, we will wait to see if the Court will require an answer.

If you have any questions regarding the above or the attached in the meantime, please do not hesitate to call.

Michelle A. Mierzwa
Pite Duncan, LLP
(619) 326-2409

EXHIBIT C

AURORA LOAN SERVICES

10350 Park Meadows Drive, Littleton, CO 80124

June 12, 2007

Margaret Lucero
4434 Brisbane Way 3
Oceanside, CA 92054

Re Loan Number: 0033514316

Dear Margaret Lucero:

In connection with a routine post-closing review, Aurora Loan Services LLC ("Aurora") discovered that the Federal Truth in Lending Disclosure you recently signed at the time of closing had an error. In particular, the total finance charge was understated by $1,915.59

The understatement of the total finance charge was purely a clerical error and does not affect your loan in any manner. However, as a result of this error, Aurora is required to provide a refund to you in the amount of $1,915.59.

In addition, you are entitled to a new Notice of Right to Cancel because of this error. Thus, we have enclosed two copies of the new Notice of Right to Cancel, one set for each borrower. As the notices indicate, you have until midnight of the expiration date on the Notice of Right to Cancel to notify us of your desire to cancel your loan. **Please note that cancellation of the loan would require that you return to us the principal amount of the loan, less any fees that you paid to us or any third party. <u>You do not have to return the Notice of Right to Cancel unless you wish to cancel your loan.</u>**

Please do not hesitate to contact me if you have any questions concerning this matter. Thank you.

Sincerely,

Melissa J. Hruby
Due Diligence Coordinator
Quality Control

Phone: 720.945.4120
Fax: 646.758.4594
Email: mhruby@alservices.com

```
                                                  #P  1
         JUN 12, 2007      ACT_WT  LTR
1228AW                     BILL WT LTR
SERVICE 1DA                        ALL CURRENCY    ;D
TRACKING# 121228AW0146352219
DEPT NO.: 46965
SENDERS NAME: QC/MJH
                                 FRT: SHP
HANDLING CHARGE 0.00                 SVC 8.32 USD
SHIPMENT REF RATE CHARGES:               RS  0.00
                    COD    0.00          SD  0.00
DV 0.00             DG     0.00          SP  0.00
DC 0.00             PR     0.00              8.32
AH 0.00                   REF+HANDLING
TOT REF CHG  8.32
```

c

EXHIBIT C

R

**Aurora Loan Services** DATE: 06/08/2007 CHECK NUMBER: 151886

| Invoice Number | Invoice Date | Invoice Description | Amount Paid |
|---|---|---|---|
| 0033514316 | 05/23/2007 | TILS 5/23/2007 | 1,915.59 |

Paid to: LUCERO I MARGARET R
Date: 06/08/20(

$1,915.59

THIS MULTI-TONE AREA OF THE DOCUMENT CHANGES COLOR GRADUALLY AND EVENLY FROM DARK TO LIGHT.

AURORA LOAN SERVICES
10350 Park Meadows Drive
Littleton, CO 80124
720.945.3000

USBank
Miamisburg, OH

56-503/422

| DATE | 06/08/2007 | CHECK NUMBER | 151886 |
|---|---|---|---|

PAY ***Exactly one thousand nine hundred fifteen and 59 / 100***

| AMOUNT | $1,915.59 |
|---|---|

VOID AFTER 180 DAYS

TO THE ORDER OF
MARGARET R LUCERO
4434 BRISBANE WAY 3
OCEANSIDE, CA 92054

THE ORIGINAL DOCUMENT HAS A REFLECTIVE WATERMARK ON THE BACK. HOLD AT AN ANGLE TO VIEW WHEN CHECKING THE ENDORSEMENT.

⑈00151886⑈ ⑆042205038⑆ 130103012220⑈

# NOTICE OF RIGHT TO CANCEL

Lender: Lehman Brothers Bank, FSB
Aurora Loan Services
10350 Park Meadows Drive
Littleton, CO 80124

Date: 6/12/2007
Loan Number: 0033514316
Type: CONV

BORROWERS/OWNERS: Margaret Lucero

ADDRESS: 4434 Brisbane Way 3
CITY/STATE/ZIP: Oceanside, CA 92054
PROPERTY: 4434 Brisbane Way 3, Oceanside, CA 92054

## YOUR RIGHT TO CANCEL

You are entering into a new transaction to increase the amount of credit previously provided to you. Your home is the security for this new transaction. You have a legal right under federal law to cancel this new transaction, without cost, within three business days from whichever of the following events occurs last:

(1) The date of the transaction, which is; 11/01/2006 or
(2) The date you received your Truth in Lending disclosures; or
(3) The date you received this notice of your right to cancel.

If you cancel the transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that your home does not secure the increase in credit. We must also return any money you have given to us or anyone else in connection with this new transaction.

You may keep any money we have given you until we have done the things mentioned above, but you must then offer to return the money at the address below. If we do not take possession of the money within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

## HOW TO CANCEL

If you decide to cancel this transaction, you may do so by notifying us in writing, at:

Aurora Loan Services, A Lehman Brothers Company
10350 Park Meadows Drive
Littleton, CO 80124

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of 06/16/2007 (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above). If you sent or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

## I WISH TO CANCEL

______________________________ ______________
Signature Date

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL.

Each borrower/owner in this transaction has the right to cancel. The exercise of this right by one borrower/owner shall be effective to all borrowers/owners.

______________________________ ______________________________
BORROWER/OWNER DATE BORROWER/OWNER DATE

______________________________ ______________________________
BORROWER/OWNER DATE BORROWER/OWNER DATE

06/16/2007 10:59 11 PAGE 01

ATTN: AURORA LOAN SERVICES, A LEHMAN BROTHERS COMPANY

10350 PARK MEADOWS DRIVE

LITTLETON CO 80124

LOAN# 0033514316

I wish to CANCEL

[signature] 6/16/07

EXHIBIT D

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED

2008 MAY 29 PM 3:09

CLERK US DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

BY KNA DEPUTY

## I. (a) PLAINTIFFS

(b) County of Residence of First Listed Plaintiff: Arapahoe
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Pite Duncan, LLP, 525 E. Main St., El Cajon, CA 92022

## DEFENDANTS

County of Residence of First Listed Defendant: San Diego
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

'08 CV 0950 IEG JMA

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 J.M. | [X] 1 J.M. | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- [X] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 15 USC 1601, et seq.

Brief description of cause: Rescission and declaratory relief.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes [X] No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE DOCKET NUMBER

DATE: May 28, 08

SIGNATURE OF ATTORNEY OF RECORD: [signature]

FOR OFFICE USE ONLY

RECEIPT # 151354 AMOUNT $350 APPLYING IFP JUDGE MAG. JUDGE

TAC 5/29/08

CR

**UNITED STATES**
**DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 151354 - MB**

**May 29, 2008**
**15:10:39**

**Civ Fil Non-Pris**
USAO #.: 08CV0950
Judge..: IRMA E GONZALEZ
Amount.: $350.00 CK
Check#.: BC79415

**Total-> $350.00**

FROM: CIVIL FILING