# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AURORA LOAN SERVICES, LLC,<br><br>         Plaintiff,<br>vs.<br><br>MARGARET LUCERO,<br><br>         Defendant. | CASE NO. 08cv0950 IEG (JMA)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO SET ASIDE DEFAULT**<br><br>**(Doc. No. 22.)** |

  Presently before the Court is Defendant's motion to set aside the Clerk's entry of default. (Doc. No. 22.) For the reasons stated herein, the Court denies the motion.

## BACKGROUND

I. Factual Background

  Plaintiff Aurora Loan Services ("Plaintiff") is the loan servicer for the loan giving rise to this dispute. Plaintiff is responsible for collecting monthly mortgage payments and enforcing the terms of the Note and the Deed of Trust further described below. Defendant Margaret Lucero ("Defendant"), proceeding *pro se*, is the borrowing party in the agreement giving rise to this dispute.

  On November 1, 2006, Defendant entered into a written loan agreement (the "Loan") with CMG Mortgage, Inc. ("CMG") to refinance her primary residence located at 4434 Brisbane Way #3, Oceanside, California 92054 (the "Property"). In connection with the Loan, Defendant executed an adjustable rate note ("The Note") in the original principal amount of $339,000 payable to CMG and its successors and assigns. (Ex. A to Compl.) The note was secured by a Deed of Trust on the

Property. (Ex. B. to Compl.)  Plaintiff alleges Defendant was timely provided with all disclosures required under the federal Truth in Lending Act.  ("TILA").

On November 22, 2006 CMG sold and assigned its interest in the Loan to Lehman Brothers Bank, FSB, its successors and assigns. (Compl., ¶ 9.)  During Plaintiff's audit of Defendant's loan file in April 2007, Plaintiff discovered a clerical error in the final TILA disclosure Defendant had executed.  Specifically, the disclosure understated the total finance charge by $1,915.19.

Plaintiff sent Defendant a letter on June 12, 2007 notifying her of the error and enclosing a refund check in the amount of $1,915.19.  In connection with this disclosure and refund, Plaintiff also provided Defendant with a new Notice of Right to Cancel form "re-opening" Lucero's rescission period pursuant t 15 U.S.C. § 1635 *et seq*.  (See Ex. C to Compl.)  On June 16, 2007, within the three day period provided in the new Notice of Right to Cancel, Defendant sent Plaintiff a written notice of her election to cancel the Loan.  (Ex. D to Compl.)

Plaintiff contends that it has been and is presently prepared to rescind the Loan pursuant to 15 U.S.C. § 1635(b).[1]  It contends it has contacted Defendant, informed her of the payoff amount necessary for her to tender the loan proceeds, and requested confirmation that she would be able to tender to effect her requested rescission under TILA.  Thereafter Plaintiff allegedly made fruitless efforts over the course of several months to reach an amicable resolution whereby it would refund certain amounts due under TILA (such as finance charges) and Defendant would tender.  Plaintiff contends Defendant was represented by counsel for part of this time.  Plaintiff contends it is still unable to complete the rescission because Defendant has failed to tender or provide a sufficient

---

[1] "Return of money or property following rescission. When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court." 15 U.S.C. § 1635(b) (2009).

1 indication of her ability and intent to tender.

2 II.     Procedural Background

3   On May 29, 2008, Plaintiff brought the instant Complaint for rescission under TILA and for declaratory relief.  Specifically, Plaintiff's rescission claim requests that the court equitably modify the rescission procedures set forth in 15 U.S.C. § 1635(b) and require Defendant to tender in advance of any rescission.  Alternatively, Plaintiff seeks a declaration from the Court that Defendant's request to rescind the loan under TILA is denied, the loan is not rescinded, and all terms of the Note, Deed of Trust and other loan documents remain in full force and effect according to their terms.

   Defendant was served with the complaint on July 27, 2008.  (Doc. No. 5.)  On August 18, 2008 Defendant filed a motion for extension of time to answer the complaint (Doc. No. 8,) because the parties were in "settlement negotiations" and that Plaintiff's counsel had consented to the extension.  Defendant attached an email from Plaintiff's counsel stating Plaintiff "would be willing to consent to the extension during the pendency of our settlement negotiations." ("August 28th Email.")  On August 22, 2008 the Court granted Defendant a thirty day extension.  (Doc. No. 9.)

   On September 22, 2008 Defendant filed another motion for an extension of time to respond to the complaint, again stating Plaintiff's counsel had consented to the extension, and attaching the August 28th Email.  (Doc. No. 11.)  The Court granted the motion on September 30, 2008, allowing Defendant thirty additional days to respond to the Complaint.  (Doc. No 12.)

   On October 30, 2008, Defendant filed a third motion for extension of time, this time for 90 days or more, again stating the parties were still in negotiations and that Plaintiff's counsel had assented to the extension.  Defendant again attached the August 28th Email. (Doc. No. 14.)  Plaintiff filed an Opposition on November 7, 2008 (Doc. No. 15,) stating that it had not consented to Defendant's motion, and that the extension sought was unreasonable in length.  Plaintiff further stated that its negotiations with Defendant reached an impasse in the middle of October.  Plaintiff also stated it did not object to a final thirty day extension of time.  The Court granted Defendant a final twenty day extension of time on December 31, 2008.  (Doc. No. 17.)

   Defendant never filed a response to the complaint.  On April 6, 2009 Plaintiff's counsel attempted to contact Defendant by telephone to advise her Plaintiff intended to seek entry of default

against her, and left Defendant a message to that effect. [Benbow Decl. ISO Opp. ("Benbow Decl,") ¶ 8.] Plaintiff requested that the Clerk of Court enter default against Defendant on May 12, 2009, (Doc. No. 18,) and the Clerk entered default on May 13, 2009. (Doc. No. 19.) On June 29, 2009 Defendant moved to set aside the default. (Doc. No. 22.) Plaintiff has filed an opposition. (Doc. No. 25.) The Court heard oral argument on Defendant's motion on Tuesday August 4, 2009.

## **DISCUSSION**

Defendant has filed a one-paragraph "Request to Remove or Set Aside Default" stating she had suffered from a severe medical condition requiring long-term hospitalization. At oral argument, Defendant indicated she had been hospitalized at three different locations from October 2008 through May of 2009. She states she did not receive the April 6, 2009 message from Plaintiff's counsel, and states that on several occasions she attempted to "get information" from Plaintiff but was unsuccessful because she needed Plaintiff's counsel's telephone number. Nevertheless, Defendant states she informed Plaintiff's counsel of her hospitalization and remained interested in working out a settlement, but that she never heard back from Plaintiff's counsel. Defendant does not provide the means or dates of these attempted communications, and has attached no supporting documentation to her motion.

I.     Legal Standard

Pursuant to Rule 55(c), the Court may set aside an entry of default for "good cause shown." Fed. R. Civ. P. 55(c) (2009). In determining whether good cause exists, the Court must consider: (1) whether the defendant engaged in culpable conduct that led to the default; (2) whether the defendant has a meritorious defense; and (3) whether reopening the default judgment would prejudice the plaintiff. See Franchise Holding II, LLC. v. Huntington Rests. Group, Inc., 375 F.3d 922, 925-926 (9th Cir. 2004); Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984) (per curiam). A court may deny a motion to set aside an entry of default if any one of the three factors favor default. Franchise Holding, 375 F.3d at 925-26 (citing American Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1108 (9th Cir. 2000)). The defendant bears the burden of establishing the default should be set aside. Id. (citing TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 696 (9th Cir. 2001)). However, default judgments are generally disfavored and "[c]ases should be decided upon their merits whenever reasonably possible." Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986).

## II. Analysis

### A. Culpability of Defendant

The governing standard for this factor is that "a defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." TCI, 244 F.3d at 697 (citation omitted).[2] Moreover, the Ninth Circuit has "typically held that a defendant's conduct was culpable . . . where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." TCI, 244 F.3d at 698.

Plaintiff argues Defendant has behaved culpably because her third motion for an extension of time to respond to the complaint contained the material misrepresentations that: (1) Plaintiffs' counsel had consented to the third extension, when she had not; and (2) the parties were currently pursuing settlement negotiations when in fact the negotiations had ended over two weeks prior to her filing the motion. Plaintiff's counsel attaches a sworn declaration supporting these contentions. (Benbow Decl., ¶¶ 3-6.) Plaintiff argues that Defendant's hospitalization does not foreclose her culpability because when she failed to file a response to the complaint by the second extension deadline of October 30, 2006, she was nevertheless able to file a third motion for an extension based on her misrepresentation that negotiations were ongoing. Plaintiff argues, moreover, that Defendant has not alleged she was unable to file a response during the full seven months that passed between her third request for an extension and the Clerk's eventual entry of default.

In Franchise Holding, the Ninth Circuit upheld a district court's refusal to set aside an entry of default because of defendant's culpability. Franchise Holding, 375 F.3d at 926. In that case, the defendant defaulted on a loan it received from the plaintiff less than one year after entering the loan agreement. Several months after attempting to negotiate a workout arrangement, the lender sued the borrower in federal court. The defendant was served with the complaint in March 2002 and during the next month the parties attempted to negotiate a settlement but the negotiations stalled, "at least from [the plaintiff's] perspective." On April 18, 2002 the plaintiff notified the defendant that because

---

[2] The TCI court relied on the Ninth Circuit's holding "that three factors derived from the 'good cause' standard that governs the lifting of entries of default under Fed. R. Civ. P. 55(c) govern the vacating of a default judgment under Rule 60(b) as well." TCI, 244 F.3d at 696. Accordingly, the Court finds the TCI court's discussion of the Rule 55(c) factors is applicable to the instant motion to set aside default even though the TCI court considered a motion to set aside a default judgment.

of the breakdown in negotiations, it intended to pursue the litigation. The plaintiff filed for entry of default on April 23, 2002, and moved for default judgment seven months later. It was not until that point that the defendant moved to set aside both the entry of default and the default judgment.

Here, because Defendant has similarly "received actual or constructive notice of the filing of the action and failed to answer," and her conduct is also similarly culpable. Franchise Holding, 375 F.3d at 926. Regardless of her hospitalization, Defendant was at least able to file a third request for an extension of 90 days or more on October 30, 2008. Even in the unlikely event she was not aware that negotiations had broken down by that time, she was constructively made aware of that fact when Plaintiff filed its opposition to her motion for extension of time on November 7, 2008. At oral argument, Defendant merely stated she could not recall whether she had read Plaintiff's opposition. Moreover, even now, in the wake of Plaintiff's securing an entry of default, Defendant still has not indicated she will file a response to the complaint; she has merely indicated she remains willing to negotiate a loan modification. As such, even considering the regrettable circumstance of Defendant's hospitalization, the Court finds there is likely no explanation for Defendant's default that is "inconsistent with a devious, deliberate, willful, or bad faith failure to respond." TCI, 244 F.3d at 698.

### B.   Lack of Meritorious Defense

Even if Defendant's culpability did not bring about the default, she has not shown she has a meritorious legal defense to this action. "A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense." TCI, 244 F.3d at 700. "But the burden . . . is not extraordinarily heavy." Id. However, "a 'mere general denial without facts to support it' is not enough to justify vacating a default or default judgment." Franchise Holding, 375 F.3d at 926 (citation omitted). Here, Defendant's motion merely indicates that at some point after her hospitalization she "remained interested in working and negotiating out settlement that would render civil action unnecessary." This is not a legal defense. Also, at oral argument, Defendant could not assert a single legal defense, let alone one that is meritorious. Defendant's lack of a meritorious defense is an independent basis for denying her motion to set aside the entry of default under Fed. R. Civ. P. 55(c).

///

C.    Prejudice

Prejudice requires more than mere delay in the resolution of the case; "[r]ather, 'the standard is whether [plaintiff's] ability to pursue his claim will be hindered.'" TCI, 244 F.3d at 701 (citing Falk, 739 F.2d at 463). Here, Plaintiff has not indicated that it will suffer any prejudice if the Court sets aside the entry of default. Accordingly, the Court does not reach this inquiry.

## CONCLUSION

For the reasons stated herein, the Court denies Defendant's motion to set aside default.

**IT IS SO ORDERED.**

**DATED:  August 12, 2009**

*[signature]*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**